**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OLIVIA NANTONGO,<br><br>                              Plaintiff,<br><br>-against-<br>Fred V. Charles, individually and as principal of Charles Law, P.C.; Charles Law, P.C.; and Ralph Charles, individually,<br><br>                              Defendant. | Case No. 1:26-cv-01769 (OEM)(VMS)<br><br>First Amended Complaint<br>and Demand For Jury Trial |

Plaintiff Olivia Nantongo ("Plaintiff" or "Ms. Nantongo"), by and through her undersigned counsel, T.A. Blackburn Law, PLLC, alleges the following against Defendants Fred V. Charles ("Fred Charles"), Charles Law, P.C. (the "Firm"), and Ralph Charles ("Ralph Charles") (collectively, "Defendants"). Plaintiff alleges facts concerning herself and her own conduct on personal knowledge and alleges all other matters on information and belief after reasonable investigation, including review of the public docket, settlement documents, payment records made available to her, and a forensic document examination.

**PRELIMINARY STATEMENT**

1. This action concerns an attorney's alleged use of four electronically duplicated signatures to manufacture his client's consent, settle her employment claims without authority, obtain entry of a federal judgment in her name, retain a substantial portion of the proceeds without a signed fee agreement or accounting, and conceal the transaction until the ordinary time to challenge it had expired.

2. Plaintiff retained Fred Charles and the Firm to pursue employment claims against Nationwide Mortgage Bankers, Inc. ("NMB"). The attorney-client relationship gave Fred Charles access to Plaintiff's personal information, prior signature exemplars, legal claims, and exclusive control over the underlying litigation. It did not give him authority to forge her signature, accept a Rule 68 offer, execute a settlement, or determine unilaterally what portion of the proceeds he would keep.

3. Over approximately three years, Fred Charles caused Plaintiff's identical signature image to appear on four separate instruments: two EEOC charges, a settlement agreement, and a Notice of Acceptance of a Rule 68 Offer of Judgment filed in this Court. A certified forensic document examiner concluded that the signatures are not four independent handwritten signatures, but the same duplicated image.

4. The settlement documents reflected a $20,000 Rule 68 judgment component. On information and belief, NMB paid $45,000 in total consideration to resolve Plaintiff's claims. Fred Charles and the Firm remitted $28,000 to Plaintiff and retained $17,000, while providing no executed retainer, no signed contingency-fee agreement, no closing statement, no client ledger, and no accounting establishing contractual authority to keep that sum.

5. Ralph Charles then personally delivered the partial payment. While doing so, he stated, "Fred has already been paid." In context, that statement represented that Fred Charles's compensation had been paid separately and that the delivered check represented the full amount due to Plaintiff. Plaintiff alleges that the statement was knowingly false and was made to induce her to accept the check without demanding the settlement papers, the docket, or an accounting.

6. Plaintiff did not learn that her signature had been used on settlement papers or that judgment had been entered until present counsel obtained the underlying federal docket in early 2026. She promptly commissioned a forensic examination and commenced this action. Her acceptance of a partial payment, without knowledge of the material facts and in reliance on Ralph Charles's

affirmative concealment, did not ratify the unauthorized settlement, waive her claims, or authorize Defendants' retention of funds.

7. This action does not ask this Court, in this pleading, to vacate or modify the judgment entered in the underlying action. Plaintiff reserves any request for relief from that judgment for the underlying docket. Here, she seeks damages and equitable relief from her former attorney, his professional corporation, and Ralph Charles for their own independent torts, fiduciary breaches, statutory deceit, and retention of identifiable client funds.

8. Plaintiff pleads alternative and inconsistent theories as permitted by Federal Rule of Civil Procedure 8(d)(2)-(3). She does not seek duplicative recovery. The alternative counts ensure that the alleged conduct is redressable whether the factfinder concludes that Fred Charles acted intentionally, recklessly, or negligently.

## PARTIES

9. Plaintiff Olivia Nantongo is a natural person and a citizen of the Kingdom of Sweden and the Republic of Uganda. When this action commenced on March 25, 2026, she was physically present in Sweden, maintained her home there, lived there with and cared for her children following a death in her family, and intended to remain there indefinitely. She was not domiciled in New York or any other State.

10. Plaintiff is a lawful permanent resident of the United States, but she did not maintain a New York home or residence when this action commenced and did not intend to return to New York as her fixed and permanent home. Her lawful-permanent-resident classification does not alter the pleaded fact that her domicile was Sweden.

11. Defendant Fred V. Charles is a natural person domiciled in New York. He is an attorney admitted to practice in New York, was Plaintiff's counsel in the underlying employment matter, and at all relevant times was the principal, owner, and sole shareholder of Charles Law, P.C. He conducted the Firm's business from 1428 Granada Place, Queens, New York 11691. At relevant times, he also held himself out as a New York notary public, Commission No. 02CH6423718, qualified in Queens County.

12. Defendant Charles Law, P.C. is a New York professional corporation with its principal place of business at 1428 Granada Place, Queens, New York 11691. The Firm undertook Plaintiff's representation, appeared as her counsel, received or controlled settlement proceeds paid on her claims, and benefited from the fees or funds that Fred Charles retained.

13. Defendant Ralph Charles is a natural person domiciled in New York and is Fred Charles's brother. Ralph Charles lives at home with his parents and his brother Fred.  He is domiciled at 1428 Granada Place, Queens, New York 11691.  Upon information and belief, Ralph Charles I NOT a licensed attorney, but on multiple occasion she has fraudulently presented himself as such. He was not Plaintiff's lawyer.

14. Upon information and belief, he was familiar with EEOC and employment-dispute procedures through his work and experience. He acted in his individual capacity when he took custody of Plaintiff's settlement check, delivered it to her, and made the statement alleged below.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2). Plaintiff is a citizen of foreign states and was domiciled in Sweden when this action commenced. Each Defendant is a citizen of New York. The statutory exception for a lawful permanent resident domiciled in the same State as the adverse United States citizen does not apply because Plaintiff was not domiciled in New York.

16. The amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff seeks, among other relief, compensatory damages arising from the loss and unauthorized disposition of valuable FLSA and New York Labor Law claims, return of identifiable settlement proceeds, forfeiture and disgorgement of fees, punitive damages, and treble damages under New York

2

Judiciary Law § 487. It does not appear to a legal certainty that Plaintiff can recover no more than $75,000.

17. This Court has personal jurisdiction over Defendants because they are domiciled in New York, conduct business in New York, and committed substantial parts of the alleged conduct in New York.

18. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions occurred in this District, including acts undertaken from the Firm's Far Rockaway office, transmission of settlement documents concerning a Queens employer, receipt and control of settlement proceeds, and the filing of the challenged Notice of Acceptance in *Nantongo v. Nationwide Mortgage Bankers, Inc.,* No. 1:22-cv-04974-MKB-VMS (E.D.N.Y.). Venue is also proper as to the Firm under 28 U.S.C. § 1391(b)(1) and (c)(2).

## FACTUAL ALLEGATIONS
### A. The Attorney-Client Relationship and Underlying Employment Claims

19. From approximately February 2020 through July 2021, Plaintiff worked for NMB in Queens, New York. She asserted employment claims arising from that work, including claims for unpaid minimum wages and overtime under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

20. In late 2021, Plaintiff sought Fred Charles's legal assistance. Fred Charles and the Firm accepted the engagement, undertook to act as Plaintiff's counsel, submitted administrative papers in her name, commenced and prosecuted the underlying federal action, communicated with NMB's counsel, negotiated a resolution, and received or controlled funds paid on Plaintiff's claims.

21. The attorney-client relationship existed regardless of Defendants' failure to secure Plaintiff's signature on an engagement letter. Defendants have relied upon or produced an unsigned engagement or retainer document, but Plaintiff never signed that document and never signed any contingency-fee agreement authorizing Fred Charles or the Firm to retain a percentage of her recovery.

22. Plaintiff authorized Fred Charles and the Firm to investigate and prosecute her claims. She did not give them advance, blanket, oral, implied, or written authority to settle on any terms Fred Charles selected.

23. Plaintiff never authorized acceptance of a Rule 68 offer, never authorized Fred Charles to sign her name, never authorized anyone to affix an image of her signature to a settlement document, and never agreed that Fred Charles or the Firm could withhold $17,000 from settlement proceeds.

24. Under the attorney-client relationship, Fred Charles and the Firm were required to communicate settlement proposals, provide the material terms, obtain Plaintiff's informed decision, safeguard funds received for her, and render a prompt accounting. Those duties were especially important because Plaintiff was abroad and depended upon counsel for accurate information about the federal docket.

25. Plaintiff's underlying claims were genuine and possessed measurable value. NMB's willingness to pay, on information and belief, $45,000 in total consideration confirms that the claims were not nominal or frivolous. Their full value is ascertainable from payroll records, time records, wage rates, liquidated damages, statutory penalties, interest, and the fee-shifting remedies available under the FLSA and NYLL.

### B. The Three-Year Sequence of Forged Instruments

26. Rather than obtain Plaintiff's actual signatures and informed consent, Fred Charles caused the same signature image to be affixed to four different legal instruments over approximately three years (collectively, the "Forged Instruments").

27. The first instrument ("Q1") is an EEOC Charge of Discrimination, Form 5, dated December 23, 2021. It bears an image purporting to be Plaintiff's signature and a notarial certification by Fred

Charles stating, in substance, that Plaintiff personally appeared, was identified, and executed the charge before him.

28. Plaintiff did not personally appear before Fred Charles to execute Q1, did not present identification for that notarization, did not sign Q1 in his presence, and did not authorize him to notarize it.

29. The second instrument ("Q2") is an EEOC charge dated January 20, 2022. It bears the same signature image, but Plaintiff did not sign it or authorize Fred Charles to affix her signature.

30. The third instrument ("Q3") is a Settlement Agreement dated November 21, 2024, purporting to resolve Plaintiff's claims against NMB in the underlying action. Fred Charles transmitted Q3 to NMB's counsel, Justin M. Reilly, Esq. of The NHG Law Group, as an agreement executed and authorized by Plaintiff.

31. Plaintiff did not sign Q3, did not approve its terms, did not authorize Fred Charles to execute it for her, did not receive it for review before execution, and did not return any executed copy to Defendants.

32. The fourth instrument ("Q4") is a Notice of Acceptance of a Rule 68 Offer of Judgment filed as Docket Entry 42 in the underlying action on December 6, 2024. Q4 bears the same signature image and represented to this Court, NMB, and NMB's counsel that Plaintiff had personally accepted a $20,000 offer inclusive of wages, damages, and fees.

33. Plaintiff did not sign Q4, did not accept the Rule 68 offer, did not authorize Fred Charles to accept it, and did not authorize the filing of a notice bearing her signature.

34. In reliance on Q4, the Clerk entered judgment and Plaintiff's pending claims were terminated without her informed decision.

35. Plaintiff retained Kathy S. Carlson, C.F.D.E., C.Q.D.E., a certified forensic document examiner, to examine Q1 through Q4. Using the ACE-V methodology, Ms. Carlson concluded that the questioned signatures are not four independently executed signatures, but the same duplicated signature image.

36. The duplicated signatures share identical form, proportions, internal features, and image characteristics that would not recur in four separate natural signatures. The repeated identity of the image is consistent with electronic copying and placement, not separate executions by Plaintiff.

37. True and correct copies of Q1, Q2, Q3, Q4, and the forensic examiner's report are attached as Exhibits 1 through 5, respectively.

38. Defendants cannot produce an original wet-ink version of any challenged signature, a contemporaneous message transmitting Q3 or Q4 to Plaintiff for signature, a message returning either document from Plaintiff, or a communication in which Plaintiff accepted the settlement terms.

39. The absence of any execution trail is significant because Defendants controlled the client file and the electronic communications through which a genuine settlement authorization ordinarily would have been requested, transmitted, and preserved.

C.  False Notarization and Abuse of Professional Authority

40. By notarizing Q1, Fred Charles certified that Plaintiff personally appeared and executed the instrument before him. Plaintiff alleges that each material component of that certification was false.

41. Fred Charles's position as Plaintiff's lawyer and a notary gave the false certification an appearance of authenticity that Plaintiff herself could not readily detect or correct.

42. The alleged false notarization, repeated use of the same signature image, and later filing of Q4 were not clerical errors. They were separate acts, occurring on different dates and involving different recipients, that support a strong inference of deliberate conduct.

D.  The Unauthorized Settlement, Receipt of Funds, and Withholding of $17,000

43. On November 21, 2024, Fred Charles transmitted Q3 as though Plaintiff had knowingly executed the Settlement Agreement. On December 6, 2024, he filed Q4 as though Plaintiff had knowingly accepted the Rule 68 offer.

44. On information and belief, NMB paid $45,000 in total consideration to resolve Plaintiff's claims, including the $20,000 Rule 68 judgment component reflected in Q4.

45. The settlement proceeds were paid because of Plaintiff's claims and were received or controlled by Fred Charles and the Firm in their capacity as Plaintiff's attorneys.

46. Fred Charles and the Firm remitted $28,000 to Plaintiff and retained $17,000. They did not provide Plaintiff with the settlement agreement before execution, the Rule 68 offer, the Notice of Acceptance, the judgment, a settlement statement, a client ledger, a trust-account statement, copies of the settlement checks or wires, or a written explanation of the $17,000 withheld.

47. Defendants did not possess a contingency-fee agreement signed by Plaintiff authorizing the unilateral retention of $17,000. An unsigned engagement document did not establish Plaintiff's assent to a percentage fee or confer settlement authority.

48. Plaintiff does not allege that the absence of a signed fee agreement automatically resolves every possible claim for the reasonable value of legal services. She alleges that Defendants had no contractual authority to take $17,000 as a percentage fee, could not determine and pay themselves unilaterally without disclosure and accounting, and may be required to forfeit compensation because the fee arose from the very representation in which the alleged forgery and disloyalty occurred.

49. The $17,000 was a specific and identifiable portion of a known settlement fund. Plaintiff had an immediate superior possessory interest in that sum, subject only to any lawful fee established after a complete accounting and adjudication of Defendants' entitlement.

50. Fred Charles and the Firm possessed the banking, escrow, trust-account, settlement, and client-ledger records necessary to trace the funds. Plaintiff did not.

E.  Ralph Charles's Delivery of the Check and Affirmative Concealment

51. In approximately December 2024 or January 2025, after judgment was entered, Ralph Charles personally delivered the $28,000 payment to Plaintiff in the New York City metropolitan area.

52. While delivering the payment, Ralph Charles volunteered the statement, "Fred has already been paid." In the setting in which it was made, the statement conveyed that Fred Charles's compensation had been satisfied separately and that the delivered payment represented Plaintiff's complete net share.

53. The statement was material. A reasonable client who believed her lawyer had already been paid separately would have no reason to infer that the lawyer and Firm had retained an additional $17,000 from the settlement fund.

54. Ralph Charles had access to information concerning the payment and fee arrangement that Plaintiff did not possess. Fred Charles or the Firm entrusted him with the settlement check, instructed or permitted him to deliver it, and placed him in a position to speak about whether Fred Charles had been paid.

55. Ralph Charles's knowledge and intent are further supported by the specificity of his unsolicited statement, his familial relationship and coordination with Fred Charles, his custody and delivery of the payment, and, upon information and belief, his familiarity with employment-dispute procedures.

56. Upon information and belief, before making the statement, Ralph Charles communicated with Fred Charles concerning the check, the amount to be delivered, and what Plaintiff would be told. The content of those communications is peculiarly within Defendants' knowledge and will be established through discovery.

57. Ralph Charles made the statement to cause Plaintiff to accept the check without asking to see the settlement papers, without demanding a ledger, and without promptly obtaining the federal docket.

58. Plaintiff reasonably relied. She accepted the payment, believed that Fred Charles had been compensated separately, and refrained from initiating an immediate investigation or challenge.

F. No Informed Authorization, Ratification, Waiver, or Accord and Satisfaction

59. Plaintiff never knowingly assented to Q3, Q4, the $20,000 Rule 68 component, the total settlement, or Defendants' retention of $17,000.

60. Defendants did not provide Plaintiff with the material information required for ratification: the settlement terms, the amount paid, the amount retained, the basis for the fee, the filed Notice of Acceptance, or the judgment.

61. Acceptance of the $28,000 payment did not constitute ratification because Plaintiff lacked full knowledge of the material facts and accepted the payment in reliance on Ralph Charles's representation that Fred Charles had already been paid.

62. Plaintiff did not execute a release after receiving full disclosure, did not confirm the settlement after learning of the challenged signatures, and did not intentionally relinquish any known right.

63. After present counsel obtained the docket and Plaintiff learned the material facts, she acted promptly by commissioning a forensic examination, demanding information and return of funds, and pursuing relief.

64. Defendants therefore cannot transform the partial distribution that furthered the alleged concealment into informed consent, waiver, accord and satisfaction, or ratification.

G. Concealment, Discovery, Demand, and Refusal

65. During the relevant period, Plaintiff was a nonlawyer, lived abroad for significant periods, was not a registered ECF user, and reasonably depended on her lawyers to inform her of filings, offers, settlements, and judgments.

66. Fred Charles and the Firm did not send Plaintiff Q3, Q4, the judgment, or a closing statement. They did not disclose that the same signature image had been used repeatedly, that the Rule 68 acceptance had been filed, or that they had retained $17,000.

67. Those omissions violated duties arising from the attorney-client and fiduciary relationship and prevented Plaintiff from discovering facts that were exclusively or primarily within Defendants' control.

68. Plaintiff first learned of the filed Notice of Acceptance, judgment, and challenged settlement documents in early 2026, after retaining present counsel and obtaining the underlying docket.

69. Plaintiff could not reasonably have discovered the forgery earlier merely from receipt of a check because Ralph Charles affirmatively represented that Fred Charles had already been paid and Defendants withheld the documents necessary to reveal the transaction.

70. Plaintiff, through counsel, demanded an accounting and return of the wrongfully retained funds. Defendants have not rendered a complete accounting and have refused to return the disputed funds.

71. The delay impaired Plaintiff's ability to seek prompt relief in the underlying action, caused her to incur forensic and legal expenses to reconstruct the transaction, and prolonged Defendants' control and use of her funds.

72. This action was commenced well within three years of the November and December 2024 settlement acts and within two years of Plaintiff's discovery of the fraud. The claims are timely under every potentially applicable limitations period.

### H.  Independent Injuries and Damages

73. Plaintiff's injuries are not limited to the existence of the underlying judgment. They include the loss of control over her own claims, the unauthorized extinguishment and compromise of statutory employment rights, the deprivation and loss of use of identifiable settlement funds, and expenses reasonably incurred to discover and remediate Defendants' conduct.

74. For legal-malpractice purposes, Plaintiff alleges that, but for Defendants' conduct, she would have rejected the unauthorized resolution, continued litigating or negotiating with complete information, preserved her statutory claims and fee-shifting rights, and obtained a result more favorable than the unauthorized terms imposed in her name. The value of that lost result is ascertainable from objective employment and settlement evidence.

75. For fraud and fraudulent-concealment purposes, Plaintiff seeks her actual out-of-pocket losses, including the $17,000 withheld, loss of use and interest, forensic expenses, and reasonable remedial expenses proximately caused by the concealment, without seeking impermissible speculative benefit-of-the-bargain damages under that theory.

76. For breach of fiduciary duty, Plaintiff seeks distinct equitable relief arising from intentional disloyalty and self-dealing, including an accounting, fee forfeiture, disgorgement, restitution, and a constructive trust over traceable proceeds.

77. For conversion, Plaintiff seeks return of the specific, identifiable settlement funds over which Fred Charles and the Firm exercised unauthorized dominion.

78. For Judiciary Law § 487, Plaintiff seeks the treble damages authorized for injury proximately caused by Fred Charles's intentional deceit during the underlying judicial proceeding.

79. The alleged conduct was not an isolated billing disagreement. It involved repeated use of a duplicated signature image, a false notarization, deception of a court and litigants, concealment from a client, and retention of client funds. If proven, that conduct supports punitive damages on the intentional tort and fiduciary claims.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### LEGAL MALPRACTICE - PLEADED IN THE ALTERNATIVE
### (Against Fred V. Charles and Charles Law, P.C.)

80. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

81. An attorney is liable for legal malpractice when the attorney fails to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and that failure proximately causes actual and ascertainable damages. See Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer, 8 N.Y.3d 438, 442 (2007).

82. Fred Charles and the Firm owed Plaintiff professional duties arising from their attorney-client relationship, including duties to follow her settlement decisions, communicate material developments, obtain informed consent, preserve her claims, safeguard client property, maintain accurate records, and account for funds.

83. To the extent any challenged act is found negligent rather than intentional, Fred Charles and the Firm departed from ordinary professional skill and care by failing to communicate settlement proposals; failing to obtain informed consent; accepting and filing a Rule 68 acceptance without authority; failing to verify the authenticity of documents filed in Plaintiff's name; failing to provide settlement papers and the judgment; failing to maintain an executed fee agreement; failing to render an accounting; and withholding settlement proceeds without established authority.

84. Defendants' departures were a but-for and proximate cause of Plaintiff's injury. Had they exercised ordinary professional care, Plaintiff would have made the settlement decision herself, would not have had her claims extinguished on unauthorized terms, would have retained the

ability to litigate or negotiate a materially more favorable resolution, and would not have been deprived of the disputed proceeds.

85. Plaintiff's underlying FLSA and NYLL claims were meritorious and valuable. Their amount is objectively ascertainable through NMB's time, payroll, and wage records; statutory liquidated damages and penalties; interest; and fee-shifting. NMB's payment of $45,000 in total consideration further confirms that the claims had substantial settlement value.

86. Plaintiff sustained actual and ascertainable damages, including the difference between the value of the result she would have obtained with competent, authorized representation and the value actually received; the loss of statutory rights and remedies; the $17,000 withheld; and reasonable expenses required to remedy the malpractice.

87. This count is pleaded in the alternative to Plaintiff's intentional-tort and statutory claims under Federal Rule of Civil Procedure 8(d).

### SECOND CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY, DISLOYALTY, AND SELF-DEALING
### (Against Fred V. Charles and Charles Law, P.C.)

88. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

89. The attorney-client relationship is fiduciary and requires fair dealing, honesty, candor, safeguarding of client property, and undivided loyalty. See Matter of Cooperman, 83 N.Y.2d 465, 472 (1994).

90. Fred Charles and the Firm breached duties distinct from ordinary professional negligence by intentionally placing their financial interests above Plaintiff's, manufacturing purported consent, concealing the settlement and judgment, paying themselves from client proceeds without informed authorization, and withholding records necessary to expose the transaction.

91. The alleged disloyalty directly concerned the representation for which Defendants retained compensation. The Firm received or controlled the settlement funds, accepted the benefit of Fred Charles's acts, retained the disputed proceeds, and failed to correct or disclose the acts after the funds were received.

92. Plaintiff seeks remedies distinct from malpractice damages, including a complete accounting, disgorgement, restitution, and forfeiture of compensation received during and because of the alleged disloyal representation. See *Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 56 A.D.3d 1, 13-14 (1st Dep't 2008).

93. The conduct was intentional, self-interested, and morally culpable. If proven, it warrants punitive damages in addition to equitable relief.

94. To the extent the Court determines that any portion of this count overlaps with legal malpractice, Plaintiff pleads it in the alternative and limits recovery to nonduplicative relief.

### THIRD CAUSE OF ACTION
### FRAUD AND FRAUDULENT CONCEALMENT
### (Against Fred V. Charles and Charles Law, P.C.)

95. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

96. A fraud claim requires a material misrepresentation or omission, knowledge of falsity, intent to induce reliance, justifiable reliance, and injury. Fraudulent concealment additionally requires a duty to disclose. See *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179 (2011).

97. Fred Charles and the Firm had a fiduciary duty to disclose all material settlement facts, including every offer, the terms of Q3 and Q4, the use of Plaintiff's signature, the entry of judgment, the total consideration received, the amount retained, and the basis for any fee.

98. With knowledge of the truth, they concealed those facts and instead caused Plaintiff to receive a partial payment without the settlement papers, judgment, ledger, or accounting. The omission was

active and deliberate because Defendants controlled the documents and funds and had multiple natural opportunities to disclose them.

99. The same conduct was accompanied by affirmative false representations made to the EEOC, NMB, NMB's counsel, and this Court that Plaintiff had executed and authorized Q1 through Q4. Those third-party representations are pleaded as evidence of the scheme, scienter, and intent; Plaintiff's own reliance is separately pleaded below.

100. Fred Charles and the Firm intended Plaintiff to rely on their silence, their continued posture as faithful counsel, the unexplained partial distribution, and Ralph Charles's accompanying statement so that she would not investigate, demand an accounting, or timely challenge the transaction.

101. Plaintiff justifiably relied because Defendants were her lawyers, the concealed information was peculiarly within their knowledge, she was abroad and lacked ECF access, and she received the payment through Fred Charles's brother with the assurance that Fred had already been paid.

102. In reliance, Plaintiff accepted the partial payment and refrained from immediately obtaining the docket, demanding the settlement documents, and seeking timely relief.

103. Plaintiff thereby sustained direct out-of-pocket damages, including the $17,000 withheld, loss of use of that money, forensic examination expenses, and reasonable expenses incurred to uncover and remediate the fraud.

104. The fraud was intentional, repeated, and involved abuse of legal and notarial authority. Plaintiff seeks punitive damages.

## FOURTH CAUSE OF ACTION
### COMMON-LAW FRAUD
**(Against Ralph Charles)**

105. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

106. In approximately December 2024 or January 2025, in the New York City metropolitan area, Ralph Charles personally stated to Plaintiff, while delivering her settlement payment, "Fred has already been paid."

107. In context, Ralph Charles represented a presently existing material fact: that Fred Charles's compensation had been paid separately and that the check Ralph delivered represented the full net settlement amount due to Plaintiff.

108. The statement was false because Fred Charles and the Firm had retained or were retaining $17,000 from the settlement fund while remitting only $28,000 to Plaintiff.

109. Ralph Charles knew the statement was false, or acted with conscious knowledge of its falsity, as shown by his entrusted role in delivering the settlement payment, his specific knowledge that Fred had been "paid," his coordination with Fred Charles, and his access to information about the payment that Plaintiff did not possess.

110. Ralph Charles intended Plaintiff to rely by accepting the check without asking for the settlement papers, fee calculation, judgment, or accounting.

111. Plaintiff reasonably and actually relied. She accepted the check, believed Fred Charles had been compensated separately, and did not immediately investigate or challenge the transaction.

112. That reliance caused direct pecuniary injury, including prolonged deprivation and loss of use of her funds, delay-related remedial expenses, forensic costs, and impairment of her ability to seek prompt relief.

113. Ralph Charles's conduct was deliberate and formed part of an effort to conceal alleged attorney forgery and diversion of client funds. Plaintiff seeks compensatory and punitive damages.

## FIFTH CAUSE OF ACTION
## AIDING AND ABETTING FRAUDULENT CONCEALMENT - PLEADED IN THE ALTERNATIVE
### (Against Ralph Charles)

114.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

115.    Fred Charles and the Firm committed the underlying fraud and fraudulent concealment alleged in the Third Cause of Action.

116.    Ralph Charles had actual knowledge of the ongoing concealment. His custody and delivery of the payment, his unsolicited and precise statement concerning Fred Charles's compensation, and his coordination with Fred Charles support a strong inference of actual knowledge. Knowledge may be alleged generally under Federal Rule of Civil Procedure 9(b), and the communications confirming it are within Defendants' exclusive control.

117.    Ralph Charles substantially assisted the ongoing fraud by serving as the personal delivery mechanism for the partial distribution and affirmatively assuring Plaintiff that Fred Charles had already been paid.

118.    That affirmative assistance was not mere silence or ordinary familial association. It gave the partial distribution a false appearance of completeness and caused Plaintiff to refrain from investigating the amount received and retained.

119.    Ralph Charles's assistance proximately caused delay-related and remediation damages, including prolonged deprivation of funds, loss of use, forensic expenses, and impairment of Plaintiff's ability to seek timely relief.

120.    This count is pleaded in the alternative to the direct fraud claim against Ralph Charles and does not seek duplicative recovery.

## SIXTH CAUSE OF ACTION
## CONVERSION
### (Against Fred V. Charles and Charles Law, P.C.)

121.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

122.    Conversion requires a possessory right in specific property and unauthorized dominion over that property in derogation of the plaintiff's rights. Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43, 49-50 (2006).

123.    The settlement proceeds were a specific and identifiable fund of $45,000 paid because of Plaintiff's claims and entrusted to Fred Charles and the Firm in a fiduciary capacity.

124.    At a minimum, the $17,000 retained while $28,000 was remitted was a definite, identifiable portion of that fund. Plaintiff had an immediate superior right to the $17,000 absent a valid fee authorization or adjudicated entitlement.

125.    Fred Charles and the Firm exercised unauthorized dominion by retaining, transferring, using, or paying themselves from that fund without Plaintiff's informed consent, without a signed fee agreement authorizing the amount, and without an accounting.

126.    Plaintiff demanded an accounting and return of the disputed funds. Defendants failed and refused to provide complete relief.

127.    Plaintiff suffered damages equal to the amount converted, together with interest, loss of use, and other recoverable consequential damages.

128.    This claim is asserted only against the persons and entity alleged to have received or controlled the identifiable fund; it is not asserted against Ralph Charles merely because he delivered Plaintiff's partial payment.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK JUDICIARY LAW § 487**
**(Against Fred V. Charles)**

129.   Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

130.   New York Judiciary Law § 487(1) imposes civil liability upon an attorney who is guilty of deceit or collusion, or consents to deceit or collusion, with intent to deceive a court or any party. The statute creates a cause of action distinct from common-law fraud and legal malpractice. See Amalfitano v. Rosenberg, 12 N.Y.3d 8, 14 (2009); Bill Birds, Inc. v. Stein Law Firm, P.C., 35 N.Y.3d 173, 178 (2020).

131.   Fred Charles was a New York attorney acting as counsel in a pending judicial proceeding when he transmitted Q3 as Plaintiff's executed settlement agreement and filed Q4 as Plaintiff's executed acceptance of a Rule 68 offer.

132.   Q3 and Q4 represented that Plaintiff had signed, authorized, and accepted the settlement instruments. Those representations were false.

133.   Fred Charles knew they were false because Plaintiff had not signed the documents or authorized him to affix her signature or accept the settlement.

134.   Fred Charles acted with intent to deceive NMB, NMB's counsel, the Clerk, this Court, and Plaintiff so that the settlement would be treated as authorized, judgment would be entered, proceeds would be paid, and his actions would remain concealed.

135.   The deceit succeeded: NMB and its counsel treated the settlement as authorized, Q4 was docketed, the Clerk entered judgment, Plaintiff's claims were terminated, and settlement funds came under Defendants' control.

136.   Plaintiff was the party injured by the deceit and suffered damages proximately caused by it, including unauthorized compromise of her claims, deprivation of settlement funds, loss of litigation rights, and expenses incurred to uncover and remedy the conduct.

137.   Plaintiff may pursue the statutory claim in a plenary action. See Urias v. Buttafuoco, 41 N.Y.3d 560, 568-70 (2024).

138.   Plaintiff is entitled to treble damages under Judiciary Law § 487, without duplicative recovery.

**EIGHTH CAUSE OF ACTION**
**EQUITABLE ACCOUNTING**
**(Against Fred V. Charles and Charles Law, P.C.)**

139.   Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

140.   Fred Charles and the Firm stood in a fiduciary relationship with Plaintiff and received or controlled property in which Plaintiff had an ownership and possessory interest.

141.   Defendants possess the material records necessary to determine the complete financial transaction, including attorney trust or escrow account statements, deposit records, copies of checks and wires, settlement statements, client ledgers, fee calculations, disbursement records, tax reporting, and communications concerning receipt and distribution.

142.   Plaintiff demanded an accounting. Defendants did not provide a full, verified accounting supported by the underlying records.

143.   Because the relevant records and tracing information are in Defendants' exclusive possession, a damages award alone cannot establish where the funds were deposited, how they were disbursed, what amounts were retained, and whether any proceeds remain traceable.

144.   Plaintiff is entitled to a full accounting of every dollar received, held, transferred, disbursed, or retained in connection with her claims, together with production of the supporting records and payment of the balance found due.

## NINTH CAUSE OF ACTION
### UNJUST ENRICHMENT AND MONEY HAD AND RECEIVED
### PLEADED IN THE ALTERNATIVE
### (Against Fred V. Charles and Charles Law, P.C.)

145.   Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

146.   This count is pleaded in the alternative because Defendants rely on an unsigned engagement document while Plaintiff disputes the existence, validity, and scope of any agreement authorizing the fee retained.

147.   Fred Charles and the Firm received and retained money paid because of Plaintiff's claims.

148.   They were enriched at Plaintiff's expense by retaining $17,000, or such other amount as the accounting establishes, without informed authorization and while concealing the settlement and fee calculation.

149.   The money belonged in equity and good conscience to Plaintiff, subject only to any lawful compensation established after consideration of Defendants' alleged disloyalty and the value of services properly rendered.

150.   It would be inequitable to permit Defendants to retain fees or proceeds generated through an unauthorized settlement and alleged forgery.

151.   Plaintiff is entitled to restitution, disgorgement, and imposition of a constructive trust over traceable proceeds.

152.   This count is alternative to the legal and tort claims and does not seek duplicative recovery.

## PRAYER FOR RELIEF

153.   WHEREFORE, Plaintiff Olivia Nantongo respectfully requests judgment in her favor and against Defendants, without duplicative recovery, as follows:

A.   Compensatory damages against Fred V. Charles and Charles Law, P.C. on the legal-malpractice claim in an amount to be determined at trial;

B.   Compensatory and punitive damages against Fred V. Charles and Charles Law, P.C. on the fraud and fraudulent-concealment claim;

C.   Compensatory and punitive damages against Ralph Charles on the direct fraud claim and, alternatively, compensatory damages on the aiding-and-abetting claim;

D.   Disgorgement and forfeiture of fees received during the disloyal representation, restitution, and other equitable relief against Fred V. Charles and Charles Law, P.C.;

E.   Return of the specific settlement proceeds converted by Fred V. Charles and Charles Law, P.C., together with interest and loss-of-use damages;

F.   Treble damages against Fred V. Charles under New York Judiciary Law § 487;

G.   An order requiring Fred V. Charles and Charles Law, P.C. to render a complete, verified accounting supported by all trust-account, banking, ledger, settlement, and disbursement records;

H.   Restitution and disgorgement under the alternative unjust-enrichment and money-had-and-received claim;

I.   Imposition of a constructive trust and equitable lien over wrongfully retained settlement proceeds and any property or accounts into which traceable proceeds were deposited or transferred;

J.   To the extent appropriate as between Plaintiff and Defendants, a declaration that Plaintiff did not execute or authorize Q1, Q2, Q3, or Q4 and did not grant Defendants authority to affix her signature or settle on the challenged terms;

K.   Reasonable forensic, investigation, and remedial expenses recoverable as consequential damages, while excluding fees incurred solely to prosecute this action except to the extent independently authorized by statute or law;

L. Prejudgment interest at the applicable rate and from the earliest ascertainable date, and post-judgment interest under 28 U.S.C. § 1961;

M. Costs, disbursements, and attorneys' fees to the extent permitted by statute, rule, contract, or other applicable law; and

N. Such other and further legal or equitable relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

154. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on every issue so triable.

Dated: Brooklyn, New York

August 5, 2026

Respectfully submitted,

*/s/ Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T.A. BLACKBURN LAW, PLLC
1242 East 80th Street, 3rd Floor
Brooklyn, New York 11236-4160
Tel: (347) 342-7432
Email: tblackburn@tablackburnlaw.com
Counsel for Plaintiff Olivia Nantongo