**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OLIVIA NANTONGO,<br><br>                              Plaintiff,<br><br>-against-<br><br>FRED V. CHARLES, individually;<br>CHARLES LAW, P.C.; and<br>RALPH CHARLES, individually,<br>Defendants,<br><br>                              Defendants. | Case No. 1:26-cv-01769 (OEM)(VMS)<br><br>First Amended Complaint<br>and Demand for Jury Trial |

Plaintiff Olivia Nantongo ("Plaintiff" or "Ms. Nantongo"), by and through her undersigned counsel, T.A. Blackburn Law, PLLC, alleges the following against Defendants Fred v. Charles ("Fred Charles"), Charles Law, P.C. (the "Firm"), and Ralph Charles ("Ralph Charles"). Plaintiff alleges matters concerning herself and her own conduct on personal knowledge. She alleges all other matters on information and belief after reasonable investigation, including review of the underlying federal docket, the challenged settlement documents, payment information made available to her, a forensic document examination, and a recorded conversation with Fred Charles. Where facts concerning Defendants' internal communications, banking records, electronic files, and allocation of settlement payments are peculiarly within Defendants' possession, Plaintiff states the factual basis supporting her reasonable inferences.

## PRELIMINARY STATEMENT

1. This action concerns an attorney's alleged use of a single electronically duplicated signature image to manufacture his client's consent on four separate legal instruments, settle her employment claims without authority, obtain entry of a federal judgment in her name, retain a substantial portion of the resulting proceeds without an executed fee agreement or accounting, and conceal the transaction until after the one-year period ordinarily applicable to relief under Federal Rule of Civil Procedure 60(b)(3) had elapsed.

2. Plaintiff retained Fred Charles and the Firm to pursue employment claims against Nationwide Mortgage Bankers, Inc. ("NMB"). The attorney-client relationship gave Fred Charles control over filings made through counsel and imposed a duty to communicate every material offer, settlement term, filing, judgment, receipt of funds, fee deduction, and disbursement. It did not authorize him to affix Plaintiff's signature, accept a Rule 68 offer, execute a settlement, or determine unilaterally what portion of the proceeds he would keep.

3. Over approximately three years, the same signature image appeared on two EEOC charges, a private Settlement Agreement, and a Notice of Acceptance of a Rule 68 Offer of Judgment filed in the

underlying federal action. Plaintiff's forensic document examiner concluded that the signatures were not four independently written signatures but the same duplicated image, consistent with electronic copying and placement.

4. Upon information and belief, the settlement was structured in two related components: a $25,000 payment under or in connection with the private Settlement Agreement and a $20,000 Rule 68 judgment, for total consideration of $45,000. Fred Charles and the Firm remitted $28,000 to Plaintiff and retained $17,000 while providing no executed contingency-fee agreement, closing statement, client ledger, trust-account record, or accounting authorizing that retention. The precise payment instruments, dates of receipt, deposit accounts, and internal allocation are within NMB's and Defendants' possession and will be confirmed in discovery.

5. Ralph Charles, Fred Charles's nonlawyer brother, personally delivered the $28,000 payment. While doing so, he volunteered that "Fred has already been paid." In the context of personally delivering a single settlement payment without an accounting or settlement papers, the statement conveyed that Fred Charles had been compensated separately and that the delivered check represented Plaintiff's complete net share.

6. After Plaintiff later confronted Fred Charles in a recorded conversation concerning the settlement, the challenged signatures, and the missing proceeds, Fred Charles's first question was, "Did you speak to Ralph?" Fred did not first ask which document Plaintiff had discovered, deny Ralph's involvement, or ask why Ralph was relevant. This immediate inquiry, together with Ralph's entrusted delivery of the payment and his specific representation concerning Fred's compensation, supports a reasonable inference that Ralph's role was coordinated, that Fred expected Ralph to possess material knowledge concerning the transaction, and that Ralph was not an incidental courier.

7. Plaintiff did not learn that her signature had been used on settlement papers or that judgment had been entered until independent counsel obtained the underlying federal docket in early 2026. She promptly obtained a forensic examination, demanded an accounting and return of funds, and commenced this action. Her receipt of a partial payment without knowledge of the material facts did not constitute authorization, ratification, waiver, release, or accord and satisfaction.

8. This pleading does not request that this Court vacate or modify the judgment entered in the underlying action. Plaintiff reserves any application directed to that judgment for the underlying docket. She seeks here damages and equitable relief for Defendants' independent professional negligence, intentional disloyalty, fraudulent concealment, affirmative fraud, statutory deceit, conversion, and retention of identifiable client funds.

9. Plaintiff pleads alternative and inconsistent theories as permitted by Federal Rule of Civil Procedure 8(d)(2)-(3) and seeks no duplicative recovery. Each cause of action identifies the defendant-specific conduct, distinct legal duty, and available measure of relief on which it rests.

## PARTIES

10. Plaintiff Olivia Nantongo is a natural person and a citizen of the Kingdom of Sweden and the Republic of Uganda. When this action commenced on March 25, 2026, she was physically present in Sweden, maintained her home there, lived there with and cared for her children following a death in her family, and intended to remain there indefinitely. She was not domiciled in New York or any other State.

11. Plaintiff is a lawful permanent resident of the United States, but she did not maintain a New York home or residence when this action commenced and did not intend to return to New York as her fixed and permanent home. Her immigration classification does not alter the pleaded fact that her domicile was Sweden.

12. Defendant Fred v. Charles is a natural person domiciled in New York. He is an attorney admitted to practice in New York, was Plaintiff's counsel in the underlying employment matter, and at all relevant times was the principal, owner, and sole shareholder of Charles Law, P.C. He conducted the Firm's business from 1428 Granada Place, Queens, New York 11691. At relevant times, he also held himself out as a New York notary public, Commission No. 02CH0042730, qualified in Queens County.

13. Defendant Charles Law, P.C. is a New York professional corporation with its principal place of business at 1428 Granada Place, Queens, New York 11691. The Firm undertook Plaintiff's representation, appeared as her counsel, received or controlled settlement proceeds paid on her claims, and benefited from the disputed compensation and funds retained by Fred Charles.

14. At all relevant times, Fred Charles acted within the scope of his authority as the Firm's principal, owner, and attorney and in furtherance of the Firm's law practice. The Firm appeared as Plaintiff's counsel, transmitted the challenged instruments, received or controlled settlement proceeds, retained the benefit of the disputed fee, and failed to correct, repudiate, or disclose Fred Charles's conduct. The Firm is directly and vicariously liable for conduct undertaken through its principal within the scope of the representation.

15. Defendant Ralph Charles is a natural person domiciled in New York at 1428 Granada Place, Queens, New York 11691, and is Fred Charles's brother. Ralph Charles was not Plaintiff's attorney and owed her no attorney-client duties. He acted in his individual capacity when he accepted custody of Plaintiff's settlement payment, personally delivered it to her, made the representation alleged below,

3

and, upon information and belief, coordinated with Fred Charles concerning the payment and what Plaintiff would be told.

16. Upon information and belief, Ralph Charles was familiar with EEOC and employment-dispute procedures through his work and experience. That familiarity, standing alone, is not pleaded as liability; it is one circumstance bearing on whether he understood the significance of the settlement payment and the information concealed from Plaintiff.

## JURISDICTION AND VENUE

17. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2). Plaintiff is a citizen of foreign states and was domiciled in Sweden when this action commenced. Each Defendant is a citizen of New York. The statutory exception concerning a lawful permanent resident domiciled in the same State as an adverse United States citizen does not apply because Plaintiff was not domiciled in New York.

18. The amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff seeks, without duplicative recovery, malpractice damages measured by the difference between the value of the result she would have obtained through authorized and competent representation and the result imposed without consent; return and loss-of-use damages concerning the identifiable $17,000 retained; fee forfeiture, disgorgement, and restitution; punitive damages on the intentional claims; and treble damages under Judiciary Law § 487. The value of the underlying wage claims is objectively ascertainable from NMB's payroll, timekeeping, wage, and personnel records and included unpaid minimum wages and overtime, statutory liquidated damages, statutory penalties where applicable, and prejudgment interest. On the pleaded claims and remedies, it does not appear to a legal certainty that Plaintiff can recover no more than $75,000.

19. This Court has personal jurisdiction over Defendants because they are domiciled in New York, conduct business in New York, and committed substantial parts of the alleged conduct in New York.

20. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions occurred in this District, including acts undertaken from the Firm's Queens office, transmission of settlement documents concerning a Queens employer, receipt and control of settlement proceeds, delivery of Plaintiff's partial payment, and the filing of the challenged Notice of Acceptance in *Nantongo v. Nationwide Mortgage Bankers, Inc.*, No. 1:22-cv-04974-OEM-VMS (E.D.N.Y.). Venue is also proper under 28 U.S.C. § 1391(b)(1) because all Defendants reside in New York and Defendants Fred Charles, the Firm, and Ralph Charles reside in this District.

## FACTUAL ALLEGATIONS

A.  **The Attorney-Client Relationship and Underlying Employment Claims**

21. From on or about December 8, 2020 through on or about May 11, 2021, Plaintiff worked for NMB at its Queens, New York office as a business-development and marketing employee training toward a mortgage loan officer license. Her duties included making unsolicited telephone calls to prospective NMB clients using NMB call scripts and call lists, coordinating recorded video meetings with the public, and setting meetings with real-estate professionals such as accountants and brokers. NMB promised Plaintiff an hourly wage for all hours worked plus a commission of one to five percent for each mortgage loan file she assisted, yet paid her no wages whatsoever for her work, in violation of the minimum-wage and overtime requirements of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

22. Plaintiff worked full-time at NMB's Queens office, and at times remotely with management approval, yet received no wages, compensation, or other remunerative benefit for that work. NMB admitted that it did not keep records of the calls Plaintiff made on its behalf and did not know the amount of time Plaintiff spent working for it, which under Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946), and NYLL § 196-a shifts to the employer the burden of the imprecision in hours worked and permits proof of hours by just and reasonable inference. The value of Plaintiff's unpaid wages, overtime, statutory liquidated damages, and wage-notice and wage-statement penalties was part of the information Fred Charles and the Firm were retained to obtain, analyze, and pursue.

23. The underlying claims included unpaid wages, statutory liquidated damages, prejudgment interest, and any applicable wage-notice or wage-statement remedies. Plaintiff was prepared to continue litigating those claims and would not have accepted the challenged settlement terms had they been disclosed to her.

24. The two EEOC charges described below were prepared, submitted, or purportedly submitted during the same attorney-client representation concerning Plaintiff's employment with NMB. Upon information and belief, Fred Charles used or retained the signature image appearing on the EEOC charges as the source image later copied onto the Settlement Agreement and Rule 68 acceptance.

25. In late 2021, Plaintiff sought Fred Charles's legal assistance. Fred Charles and the Firm accepted the engagement, undertook to act as Plaintiff's counsel, submitted administrative papers in her name, commenced and prosecuted the underlying federal action, communicated with NMB's counsel, negotiated a resolution, and received or controlled funds paid on Plaintiff's claims.

26. The attorney-client relationship existed regardless of Defendants' failure to secure Plaintiff's signature on an engagement letter. Defendants have relied upon or produced an unsigned

5

engagement or retainer document, but Plaintiff never signed that document and never signed a contingency-fee agreement authorizing Fred Charles or the Firm to retain a percentage of her recovery.

27. Plaintiff authorized Fred Charles and the Firm to investigate and prosecute her claims. She did not grant them advance, blanket, oral, implied, or written authority to settle on any terms Fred Charles selected.

28. Plaintiff never authorized acceptance of a Rule 68 offer, never authorized Fred Charles to sign her name, never authorized anyone to affix an image of her signature to a settlement document, and never agreed that Fred Charles or the Firm could withhold $17,000 from settlement proceeds.

29. Fred Charles and the Firm were required to communicate settlement proposals, provide the material terms, obtain Plaintiff's informed decision, safeguard funds received for her, maintain appropriate records, and render a prompt accounting. Those duties were especially important because Plaintiff was abroad and reasonably depended upon counsel to transmit filings, offers, settlements, and judgments.

B. **The Four Challenged Instruments and Duplicated Signature Image**

30. Rather than obtain Plaintiff's actual signatures and informed consent, Fred Charles caused the same signature image to be affixed to four different legal instruments over approximately three years (collectively, the "Challenged Instruments").

31. The first instrument ("Q1") is an EEOC Charge of Discrimination, Form 5, dated December 23, 2021. It bears an image purporting to be Plaintiff's signature and a notarial certification by Fred Charles stating, in substance, that Plaintiff personally appeared, was identified, and executed the charge before him.

32. Plaintiff did not personally appear before Fred Charles to execute Q1, did not present identification for that notarization, did not sign Q1 in his presence, and did not authorize him to notarize it.

33. The second instrument ("Q2") is an EEOC charge dated January 20, 2022. It bears the same signature image, but Plaintiff did not sign it or authorize Fred Charles to affix her signature.

34. The third instrument ("Q3") is a Settlement Agreement dated November 21, 2024, purporting to resolve Plaintiff's claims against NMB in the underlying action. Fred Charles transmitted Q3 to NMB's counsel, Justin M. Reilly, Esq. of The NHG Law Group, as an agreement executed and authorized by Plaintiff.

35. Plaintiff did not sign Q3, approve its terms, authorize Fred Charles to execute it for her, receive it for review before execution, or return any executed copy to Defendants.

36. The fourth instrument ("Q4") is a Notice of Acceptance of a Rule 68 Offer of Judgment filed as Docket Entry 42 in the underlying action on December 6, 2024. Q4 bears the same signature image and represented to this Court, NMB, and NMB's counsel that Plaintiff had personally accepted a $20,000 offer inclusive of wages, damages, and fees.

37. Plaintiff did not sign Q4, accept the Rule 68 offer, authorize Fred Charles to accept it, or authorize the filing of a notice bearing her signature.

38. In reliance on Q4, the Clerk entered judgment and Plaintiff's pending claims were terminated without her informed decision.

39. Plaintiff retained Kathy S. Carlson, C.F.D.E., C.Q.D.E., a certified forensic document examiner, to examine Q1 through Q4. Using the ACE-V methodology, Ms. Carlson concluded that the questioned signatures are not four independently executed signatures but the same duplicated signature image.

40. The signatures share identical form, proportions, internal features, and image characteristics that would not recur in four separate natural signatures. Their repeated identity is consistent with electronic copying and placement.

41. True and correct copies of Q1, Q2, Q3, Q4, and the forensic examiner's report are attached as **Exhibit 1**, respectively.

42. Despite Plaintiff's demands and Defendants' opportunity to respond before amendment, Defendants have not produced an original bearing Plaintiff's wet-ink signature, an authenticated electronic-execution record, a communication transmitting Q3 or Q4 to Plaintiff for review or signature, a communication returning an executed document from Plaintiff, or a contemporaneous communication in which Plaintiff approved the settlement terms. Upon information and belief, no such authorization or execution record exists.

43. The absence of an execution trail is significant because Defendants controlled the client file and the electronic communications through which genuine settlement authorization ordinarily would have been requested, transmitted, and preserved.

44. Upon information and belief, Fred Charles personally copied, directed the copying of, or knowingly caused the same signature image to be placed on Q1 through Q4. This inference is based on his custody and control of Plaintiff's file and signature exemplars; his personal notarization of Q1; his transmission of Q3; his filing of Q4; the identical image across all four instruments; and the absence of any authenticated execution record.

C. **False Notarization and Intentional Use of Professional Authority**

45. By notarizing Q1, Fred Charles certified that Plaintiff personally appeared and executed the instrument before him. Plaintiff alleges that each material component of that certification was false.

46. Fred Charles's position as Plaintiff's lawyer and a notary gave the certification an appearance of authenticity that Plaintiff could not readily detect or correct.

47. The alleged false notarization, repeated use of the same signature image, transmission of Q3, and filing of Q4 were separate acts occurring on different dates and directed to different recipients. Those circumstances support a strong inference of deliberate conduct rather than clerical error.

### D.  **The Two-Part Resolution and Retention of $17,000**

48. On November 21, 2024, Fred Charles transmitted Q3 as though Plaintiff had knowingly executed the Settlement Agreement. On December 6, 2024, he filed Q4 as though Plaintiff had knowingly accepted the Rule 68 offer.

49. Upon information and belief, based on the settlement documents and payment information made available to Plaintiff, the resolution consisted of a $25,000 private-settlement component under or in connection with Q3 and a $20,000 Rule 68 judgment component under Q4, totaling $45,000 paid on account of Plaintiff's claims.

50. The precise payors, payment dates, check or wire identifiers, payees, receiving accounts, and allocation between attorney and client are peculiarly within NMB's, Fred Charles's, and the Firm's records. Plaintiff will amend or particularize those details if discovery establishes a materially different payment structure.

51. The settlement proceeds were paid because of Plaintiff's claims and were received or controlled by Fred Charles and the Firm in their capacity as Plaintiff's attorneys.

52. Fred Charles and the Firm remitted $28,000 to Plaintiff and retained $17,000. They did not provide Plaintiff with Q3 before execution, the Rule 68 offer, Q4, the judgment, a settlement statement, client ledger, trust-account statement, copies of settlement checks or wires, or a written explanation of the $17,000 retained.

53. Defendants did not possess a contingency-fee agreement signed by Plaintiff authorizing unilateral retention of $17,000. An unsigned engagement document did not establish Plaintiff's assent to a percentage fee or confer settlement authority.

54. Plaintiff does not allege that the absence of a signed fee agreement automatically resolves every possible claim for the reasonable value of lawful services. She alleges that Defendants had no contractual authority to take $17,000 as a percentage fee, could not pay themselves unilaterally without disclosure and accounting, and may be required to forfeit compensation generated during a representation infected by intentional disloyalty.

55. The $17,000 was a specific and identifiable portion of a known settlement fund. Plaintiff had an immediate superior possessory interest in that amount, subject only to any lawful fee established after a complete accounting and adjudication of Defendants' entitlement.

56. Fred Charles and the Firm possessed the banking, escrow, trust-account, settlement, and client-ledger records necessary to trace the funds. Plaintiff did not.

E.  **Ralph Charles's Delivery, Misrepresentation, and Coordinated Assistance**

57. In approximately December 2024 or January 2025, after judgment was entered, Ralph Charles personally delivered the $28,000 payment to Plaintiff in the New York City metropolitan area.

58. Ralph was not an employee identified to Plaintiff as responsible for client disbursements, was not her attorney, and had no apparent reason to possess and deliver a client settlement payment unless Fred Charles or the Firm entrusted him with that task.

59. While handing Plaintiff the payment and without providing a settlement statement or accounting, Ralph Charles volunteered, "Fred has already been paid." In that setting, the statement represented that Fred's compensation had been satisfied separately and that the delivered payment represented Plaintiff's complete net share.

60. The statement was false or materially misleading because Fred Charles and the Firm had retained or were retaining $17,000 from the combined settlement proceeds while delivering only $28,000 to Plaintiff.

61. Ralph had access to information concerning the payment and fee arrangement that Plaintiff did not possess. Fred Charles or the Firm entrusted Ralph with the settlement payment, instructed or permitted him to deliver it, and placed him in a position to speak about whether Fred had been paid.

62. Upon information and belief, before the delivery, Fred and Ralph communicated concerning the total proceeds, the amount to be delivered, the amount retained, Plaintiff's lack of access to the settlement papers, and what Ralph would tell Plaintiff. The content of those communications is within Defendants' exclusive possession.

63. Ralph's actual knowledge and intent are supported by the entrusted delivery, the specificity of his unsolicited representation concerning Fred's compensation, his familial and residential proximity to Fred, his familiarity with employment-dispute procedures, and Fred's later recorded reaction when confronted.

64. In early 2026, after Plaintiff discovered the challenged documents, she confronted Fred Charles during a conversation that Plaintiff recorded. The conversation concerned the settlement, the use of Plaintiff's signature, and the proceeds.

65. The first question Fred Charles asked Plaintiff was, "Did you speak to Ralph?" Upon information and belief, Fred asked that question because he knew Ralph had participated in the payment and concealment, possessed material knowledge concerning what Plaintiff had been told, and could disclose communications between the brothers.

66. Fred's immediate focus on whether Plaintiff had spoken to Ralph supports a reasonable inference that Ralph's role was anticipated and coordinated. It is inconsistent with the characterization of Ralph as a neutral or incidental messenger with no knowledge of the transaction.

67. Ralph made the statement to cause Plaintiff to accept the payment without asking to see the settlement papers, without demanding a ledger, and without promptly obtaining the federal docket.

68. Plaintiff reasonably relied. She accepted the payment, believed Fred Charles had been compensated separately, and refrained from initiating an immediate investigation or challenge.

F. **No Authorization, Ratification, Waiver, Release, or Accord and Satisfaction**

69. Plaintiff never knowingly assented to Q3, Q4, the $20,000 Rule 68 component, the total settlement, or Defendants' retention of $17,000.

70. Defendants did not provide Plaintiff with the material information required for ratification: the settlement terms, total amount paid, amount retained, basis for the fee, filed Notice of Acceptance, or judgment.

71. Acceptance of the $28,000 payment did not constitute ratification because Plaintiff lacked full knowledge of the material facts and accepted the payment in reliance on Ralph Charles's representation that Fred had already been paid.

72. Plaintiff did not execute a release after full disclosure, confirm the settlement after learning of the challenged signatures, or intentionally relinquish any known right.

73. After independent counsel obtained the docket and Plaintiff learned the material facts, she acted promptly by commissioning a forensic examination, demanding information and return of funds, and pursuing relief.

74. Defendants therefore cannot transform the partial distribution used to further the alleged concealment into informed consent, waiver, release, accord and satisfaction, or ratification.

G. **Concealment, Discovery, Written Demand, and Refusal**

75. During the relevant period, Plaintiff was a nonlawyer, lived abroad for significant periods, was not a registered ECF user, received no direct ECF notices, and reasonably depended upon her lawyers to inform her of filings, offers, settlements, and judgments.

76. Fred Charles and the Firm did not send Plaintiff Q3, Q4, the judgment, or a closing statement. They did not disclose that the same signature image had been used repeatedly, that the Rule 68 acceptance had been filed, that $45,000 had been paid, or that they had retained $17,000.

77. Those omissions violated duties arising from the attorney-client and fiduciary relationship and prevented Plaintiff from discovering facts primarily within Defendants' control.

78. Plaintiff first learned of Q4, the judgment, and the challenged settlement documents in early 2026 after retaining independent counsel and obtaining the underlying docket.

79. Plaintiff could not reasonably have discovered the alleged forgery merely from receipt of a check because Ralph affirmatively represented that Fred had already been paid and Defendants withheld the documents necessary to reveal the transaction.

80. On or about March 2026, Plaintiff, through present counsel, made written demand upon Fred Charles and the Firm for a complete accounting, the settlement and payment records, the client ledger, the basis for the fee, and return of the $17,000 or other funds wrongfully retained.

81. Defendants did not provide a complete verified accounting supported by the requested records and did not return the disputed funds. Their failure and refusal continued after the demand and through the filing of this amended pleading.

82. The concealment impaired Plaintiff's ability to seek prompt relief in the underlying action, caused her to incur forensic and investigative expenses to reconstruct the transaction, and prolonged Defendants' control and use of her funds.

83. This action was commenced within three years of the November and December 2024 settlement acts and within two years of Plaintiff's discovery of the alleged fraud.

H. **Distinct Injuries and Nonduplicative Measures of Relief**

84. Plaintiff's injuries include the loss of control over her claims, unauthorized compromise of statutory employment rights, deprivation and loss of use of identifiable settlement funds, and reasonable expenses incurred to discover and remediate Defendants' conduct.

85. For legal-malpractice purposes, Plaintiff alleges that, but for Defendants' departures, she would have rejected the challenged resolution, continued litigating or negotiating with complete information, preserved her statutory claims and fee-shifting rights, and obtained a materially more favorable result. The amount is ascertainable from NMB's records and applicable wage statutes.

86. For fraudulent-concealment purposes, Plaintiff seeks damages caused by delayed discovery rather than the initial withholding itself, including continued loss of use of the disputed funds, additional forensic and investigative expenses, and impairment of procedural remedies that would have been available had the concealment not occurred.

87. For breach of fiduciary duty, Plaintiff seeks relief distinct from malpractice damages: an accounting, fee forfeiture, disgorgement, restitution, a constructive trust over traceable proceeds, and punitive damages for intentional disloyalty.

88. For conversion, Plaintiff seeks return of the specific, identifiable funds over which Fred Charles and the Firm allegedly exercised unauthorized dominion, together with loss of use and interest.

89. For Judiciary Law § 487, Plaintiff seeks treble damages for injury proximately caused by Fred Charles's intentional deceit during the underlying judicial proceeding.

90. The alleged conduct involved repeated use of a duplicated signature image, a false notarization, intentional deception of a court and litigants, concealment from a client, and retention of client funds. If proven, the intentional conduct supports punitive damages on the fraud and fiduciary claims.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### LEGAL MALPRACTICE - PLEADED IN THE ALTERNATIVE
### (Against Fred V. Charles and Charles Law, P.C.)

91. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

92. An attorney is liable for legal malpractice when the attorney fails to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and that failure proximately causes actual and ascertainable damages.

93. Fred Charles and the Firm owed Plaintiff professional duties to follow her settlement decisions, communicate material developments, obtain informed consent, preserve her claims, safeguard client property, maintain accurate records, and account for funds.

94. To the extent any challenged conduct is found negligent rather than intentional, Fred Charles and the Firm departed from ordinary professional care by failing to communicate settlement proposals; failing to obtain informed consent; accepting and filing a Rule 68 acceptance without authority; failing to verify the authenticity of documents filed in Plaintiff's name; failing to provide settlement papers and the judgment; failing to maintain an executed fee agreement; failing to render an accounting; and withholding settlement proceeds without established authority.

95. But for those departures, Plaintiff would have made the settlement decision herself, would not have had her claims terminated on undisclosed and unauthorized terms, would have continued litigating or negotiated with complete information, and would have obtained a materially more favorable result.

96. Plaintiff's underlying FLSA and NYLL claims were meritorious and objectively capable of valuation, measured by unpaid minimum wages for all hours worked during her employment, unpaid overtime, statutory liquidated damages equal to the unpaid wages, wage-notice and wage-statement penalties, unpaid commissions, and prejudgment interest, with any imprecision in hours borne by NMB as the non-recordkeeping employer.

97. Plaintiff sustained actual and ascertainable damages, including the difference between the value of the result she would have obtained with competent and authorized representation and the value actually received, loss of statutory remedies, and reasonable expenses required to remediate the malpractice.

98. This count is pleaded in the alternative to the intentional-tort and statutory counts under Federal Rule of Civil Procedure 8(d).

**SECOND CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY, INTENTIONAL DISLOYALTY, AND SELF-DEALING - PLEADED IN THE ALTERNATIVE**
**(Against Fred V. Charles and Charles Law, P.C.)**

99. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

100. The attorney-client relationship is fiduciary and requires honesty, candor, safeguarding of client property, fair dealing, and undivided loyalty. See Matter of Cooperman, 83 N.Y.2d 465, 472 (1994).

101. This count is not based merely on negligent legal services. It is based on intentional disloyalty and self-dealing: manufacturing purported client authorization, placing Defendants' financial interests above Plaintiff's, paying themselves from client proceeds without informed authorization, concealing the transaction, and withholding financial records necessary to expose it.

102. The Firm received or controlled the proceeds, accepted the benefit of Fred Charles's acts, retained the disputed compensation, and failed to disclose or correct the conduct after receipt of the funds.

103. The disloyalty directly concerned the representation for which Defendants retained compensation. Plaintiff therefore seeks a complete accounting, restitution, disgorgement, and forfeiture of compensation received during and because of the disloyal representation.

104. This count does not seek the malpractice measure of lost underlying-case damages. It seeks equitable and punitive relief arising from intentional breach of loyalty.

105. The conduct was intentional, self-interested, and morally culpable. If proven, it warrants punitive damages.

106. To the extent the Court determines that any part overlaps with malpractice, Plaintiff pleads this count in the alternative and seeks no duplicative recovery.

**THIRD CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
**(Against Fred V. Charles and Charles Law, P.C.)**

107.   Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

108.   Fraudulent concealment requires a material omission, a duty to disclose, knowledge, intent to induce reliance, justifiable reliance, and resulting pecuniary injury.

109.   Fred Charles and the Firm had a fiduciary duty to disclose every settlement offer, the terms of Q3 and Q4, the use of Plaintiff's signature image, entry of judgment, total consideration received, amount retained, and basis for any fee.

110.   They had specific duties and opportunities to disclose those facts when the Rule 68 offer was received, before Q3 was transmitted, before Q4 was filed, when judgment was entered, when the settlement proceeds were received, before the $28,000 payment was delivered, and when Plaintiff later demanded an accounting.

111.   With knowledge of the truth, Fred Charles and the Firm concealed those facts and caused Plaintiff to receive a partial payment without the settlement papers, judgment, ledger, payment records, or accounting.

112.   The affirmative representations to the EEOC, NMB, NMB's counsel, and this Court that Plaintiff executed and authorized Q1 through Q4 are pleaded as evidence of the scheme, scienter, and intent; Plaintiff's own reliance rests on Defendants' fiduciary omissions, continued posture as faithful counsel, incomplete distribution, and use of Ralph Charles to deliver the payment with a misleading assurance.

113.   Fred Charles and the Firm intended Plaintiff to rely on the concealment so that she would accept the payment, refrain from investigating, refrain from demanding immediate return of the funds, and fail to seek prompt relief in the underlying action.

114.   Plaintiff justifiably relied because Defendants were her lawyers, the information was within their control, she received no direct ECF notices, and the payment was delivered through Fred's brother with the assurance that Fred had already been paid.

115.   In reliance, Plaintiff accepted the payment and refrained from immediately obtaining the docket, demanding the settlement and trust-account records, and pursuing available relief.

116.   The reliance caused continued loss of use of the disputed funds, delay-related forensic and investigative expenses, and impairment of procedural remedies. Plaintiff does not seek the initial $17,000 withholding as reliance damages under this count.

117.   The concealment was intentional, repeated, and involved abuse of legal and notarial authority. Plaintiff seeks compensatory and punitive damages.

## FOURTH CAUSE OF ACTION
## COMMON-LAW FRAUD
### (Against Ralph Charles)

118. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

119. In approximately December 2024 or January 2025, while personally delivering Plaintiff's $28,000 settlement payment in the New York City metropolitan area and without providing settlement documents or an accounting, Ralph Charles volunteered, "Fred has already been paid."

120. In context, the statement represented a presently existing material fact: that Fred Charles had been compensated separately and that the delivered payment represented Plaintiff's complete net share.

121. The statement was false or materially misleading because Fred Charles and the Firm had retained or were retaining $17,000 from the combined settlement proceeds while remitting only $28,000 to Plaintiff.

122. Ralph had actual knowledge of the falsity or misleading nature of the statement. That knowledge is supported by his entrusted possession and delivery of the payment, his specific unsolicited statement about Fred's compensation, his communications and coordination with Fred upon information and belief, and Fred's recorded first question—"Did you speak to Ralph?"—when Plaintiff later confronted him regarding the transaction.

123. Upon information and belief, Ralph knew the amount delivered was less than the total proceeds, knew Plaintiff had not been given an accounting or settlement papers, and knew his statement would convey that no additional fee had been deducted from Plaintiff's share.

124. Ralph intended Plaintiff to rely by accepting the payment without asking to see the settlement papers, fee calculation, judgment, or accounting.

125. Plaintiff reasonably and actually relied. She accepted the payment, believed Fred had been compensated separately, and did not immediately investigate or challenge the transaction.

126. That reliance caused continued deprivation and loss of use of funds, delay-related remedial expenses, forensic costs, and impairment of Plaintiff's ability to seek prompt relief.

127. Ralph's conduct was deliberate and formed part of an effort to conceal the handling of client settlement funds. Plaintiff seeks compensatory and punitive damages.

**FIFTH CAUSE OF ACTION**
**AIDING AND ABETTING FRAUD**
**(Against Ralph Charles - Pleaded in the Alternative)**

128. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

129. The underlying fraud is the fraudulent concealment committed by Fred Charles and the Firm as alleged in the Third Cause of Action.

130. Aiding and abetting fraud requires an underlying fraud, actual knowledge, and substantial assistance.

131. Ralph had actual knowledge of the ongoing concealment. His knowledge is supported by the surrounding circumstances, including his unusual entrusted possession and delivery of a client settlement payment; his unsolicited statement concerning Fred's compensation; his access to information about the amount delivered; his communications with Fred upon information and belief; and Fred's recorded immediate inquiry, "Did you speak to Ralph?" when confronted.

132. Upon information and belief, Fred asked whether Plaintiff had spoken to Ralph because the brothers had coordinated the delivery and message, Fred expected Ralph to possess material information, and Fred was concerned about what Ralph had disclosed.

133. Ralph substantially assisted the concealment by accepting custody of the payment, personally delivering only the partial distribution without supporting records, and affirmatively representing that Fred had already been paid.

134. Those acts were affirmative assistance, not mere silence or familial association. They gave the partial distribution a false appearance of completeness and induced Plaintiff to refrain from investigating the total proceeds and fee deduction.

135. Ralph's assistance proximately caused continued loss of use, delay-related remedial and forensic expenses, and impairment of Plaintiff's ability to seek prompt relief.

136. This count is pleaded in the alternative to the direct fraud count against Ralph. The direct-fraud count concerns Ralph's own material representation; this count concerns his knowing assistance to Fred's broader fiduciary concealment. Plaintiff seeks no duplicative recovery.

## SIXTH CAUSE OF ACTION
## CONVERSION
### (Against Fred V. Charles and Charles Law, P.C.)

137.   Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

138.   Conversion requires a possessory right in specific property and unauthorized dominion over that property in derogation of the plaintiff's rights.

139.   The settlement proceeds were a specific and identifiable fund of $45,000 paid because of Plaintiff's claims and entrusted to Fred Charles and the Firm in a fiduciary capacity.

140.   At a minimum, the $17,000 retained while $28,000 was remitted was a definite and identifiable portion of that fund. Plaintiff had an immediate superior right to that amount absent a valid fee authorization or adjudicated entitlement.

141.   Fred Charles and the Firm exercised unauthorized dominion by retaining, transferring, using, or paying themselves from that fund without Plaintiff's informed consent, without a signed agreement authorizing the amount, and without an accounting.

142.   On or about March 2026, Plaintiff, through counsel, made written demand for a complete accounting and return of the disputed funds. The demand identified the settlement proceeds, requested the settlement and trust-account records, and demanded return of the $17,000 or other balance established by the records.

143.   Fred Charles and the Firm failed and refused to provide a complete accounting and did not return the disputed funds.

144.   Plaintiff suffered damages equal to the amount converted, together with prejudgment interest, loss of use, and recoverable consequential damages.

## SEVENTH CAUSE OF ACTION
## VIOLATION OF NEW YORK JUDICIARY LAW § 487
### (Against Fred V. Charles)

145.   Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

146.   Judiciary Law § 487(1) imposes liability upon an attorney guilty of deceit or collusion, or who consents to deceit or collusion, with intent to deceive a court or party. It creates a cause of action distinct from common-law fraud and malpractice.

147.   Fred Charles was a New York attorney acting as counsel in a pending judicial proceeding when, on November 21, 2024, he transmitted Q3 to NMB's counsel as Plaintiff's executed and authorized Settlement Agreement.

148.   Q3 falsely represented that Plaintiff had signed and authorized the agreement. Fred knew that representation was false because Plaintiff had not signed Q3 or authorized him to affix her signature.

149. Fred intended NMB and its counsel to treat Q3 as genuine and authorized so that the resolution would proceed and funds would be paid.

150. On December 6, 2024, Fred filed Q4 as Docket Entry 42 in the underlying action. Q4 represented to the Clerk, the Court, NMB, and NMB's counsel that Plaintiff had signed and accepted the Rule 68 offer.

151. Q4 was false. Fred knew Plaintiff had not signed Q4, had not accepted the offer, and had not authorized him to file an acceptance bearing her signature.

152. Fred intended the Clerk, the Court, NMB, and NMB's counsel to rely upon Q4, enter judgment, terminate Plaintiff's claims, and release settlement funds.

153. The deceit succeeded: Q4 was docketed, judgment was entered, Plaintiff's claims were terminated, and settlement funds came under Defendants' control.

154. Plaintiff was injured by the deceit through unauthorized compromise of her claims, deprivation of settlement funds, loss of litigation rights, and expenses incurred to uncover and remedy the conduct.

155. Plaintiff may pursue the statutory claim in a plenary action.

156. Plaintiff is entitled to treble damages under Judiciary Law § 487 without duplicative recovery.

**EIGHTH CAUSE OF ACTION**
**EQUITABLE ACCOUNTING**
**(Against Fred V. Charles and Charles Law, P.C.)**

157. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

158. Fred Charles and the Firm stood in a fiduciary relationship with Plaintiff and received or controlled money in which Plaintiff had an ownership and possessory interest.

159. Defendants possess the records necessary to determine the full transaction, including attorney trust or escrow statements, deposit records, copies of checks and wires, settlement statements, client ledgers, fee calculations, disbursement records, tax reporting, and communications concerning receipt and distribution.

160. On or about March 2026, Plaintiff made written demand for a complete verified accounting and the underlying records. Defendants did not provide the requested accounting.

161. Although Plaintiff seeks legal damages in the alternative, those damages cannot establish where the funds were deposited, how they were disbursed, what amounts were retained, whether proceeds were transferred, or whether traceable funds remain. Those matters are within Defendants' exclusive financial records.

162.    Plaintiff is entitled to a complete accounting of every dollar received, held, transferred, disbursed, or retained in connection with her claims, together with production of supporting records and payment of the balance found due.

## NINTH CAUSE OF ACTION
## MONEY HAD AND RECEIVED - PLEADED IN THE ALTERNATIVE
### (Against Fred V. Charles and Charles Law, P.C.)

163.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

164.    This quasi-contract count is pleaded in the alternative because Defendants rely on an unsigned engagement document while Plaintiff disputes the existence, validity, and scope of any agreement authorizing the amount retained.

165.    NMB paid money on account of Plaintiff's claims, and Fred Charles and the Firm received or controlled that money.

166.    A specific $17,000 portion, or such other balance as the accounting establishes, belonged beneficially to Plaintiff subject only to any lawfully established compensation.

167.    Fred Charles and the Firm benefited from retaining the money without informed authorization, complete disclosure, or accounting.

168.    Plaintiff demanded return of the money, and Defendants failed and refused to return it.

169.    In equity and good conscience, Defendants should not retain compensation or proceeds generated through an allegedly unauthorized settlement and intentional disloyalty.

170.    Plaintiff is entitled to restitution and imposition of a constructive trust or equitable lien over traceable proceeds.

171.    This count is pleaded in the alternative and seeks no duplicative recovery.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment in her favor and against Defendants, without duplicative recovery, as follows:

a.  Compensatory damages against Fred v. Charles and Charles Law, P.C. on the legal-malpractice claim in an amount to be determined at trial;

b.  Disgorgement and forfeiture of compensation, restitution, punitive damages, and other nonduplicative equitable relief against Fred v. Charles and Charles Law, P.C. on the fiduciary-duty claim;

c.  Compensatory and punitive damages against Fred v. Charles and Charles Law, P.C. on the fraudulent-concealment claim;

d.  Compensatory and punitive damages against Ralph Charles on the direct fraud claim and, alternatively, compensatory damages on the aiding-and-abetting claim;

e.  Return of the specific funds converted by Fred v. Charles and Charles Law, P.C., together with prejudgment interest and loss-of-use damages;

f.  Treble damages against Fred v. Charles under Judiciary Law § 487;

g.  An order requiring Fred v. Charles and Charles Law, P.C. to render a complete verified accounting supported by all trust-account, banking, ledger, settlement, and disbursement records;

h.  Restitution under the alternative money-had-and-received claim;

i.  Imposition of a constructive trust and equitable lien over wrongfully retained and traceable settlement proceeds;

j.  Reasonable forensic, investigation, and remedial expenses recoverable as consequential damages, excluding fees incurred solely to prosecute this action except to the extent independently authorized by statute or law;

k.  Prejudgment interest at the applicable rate from the earliest ascertainable date and post-judgment interest under 28 U.S.C. § 1961;

l.  Costs, disbursements, and attorneys' fees to the extent permitted by statute, rule, contract, or other applicable law; and

m.  Such other and further legal or equitable relief as the Court deems just and proper.


## DEMAND FOR JURY TRIAL

172.  Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on every issue so triable.


Dated: Brooklyn, New York
August 6, 2026

Respectfully submitted,

*/s/ Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T.A. BLACKBURN LAW, PLLC
1242 East 80th Street, 3rd Floor
Brooklyn, New York 11236-4160
Tel: (347) 342-7432
Email: tblackburn@tablackburnlaw.com
Counsel for Plaintiff Olivia Nantongo